UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

HILDA TENTION,

                 *Plaintiff*,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

                *Defendant*.

-------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-04659 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Hilda Tention (the "Plaintiff") appeals the final decision of the Commissioner of Social Security (the "Defendant" or the "Commissioner") finding her not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits under Title II of the Act. Plaintiff and the Commissioner have cross moved for judgment on the pleadings. For the reasons herein, Plaintiff's motion is **GRANTED**, the Commissioner's motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

        The parties have filed a joint stipulation of relevant facts, which the Court has reviewed and incorporates by reference.

1

(*See generally* ECF No. 10-1, Joint Stipulation of Facts.)   The Court briefly recounts the facts relevant to the instant motions.

On July 29, 2016, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability since December 11, 2015.  (ECF No. 7, Administrative Transcript ("Tr."), at 13, 216-222.)  Plaintiff alleged that she was disabled due to problems with her back, both shoulders, head, and lower extremities, in addition to joint pain, high blood pressure, borderline diabetes, and deep vein thrombosis with a blood clot in her left leg.  (*Id.* at 446.)  Her application was denied on September 20, 2016.  (*Id.* at 59-65.)

On November 3, 2016, Plaintiff filed a written request for a hearing before an administrative law judge.  (*Id.* at 110-12.)  Administrative Law Judge Michael Friedman ("ALJ Friedman") held a hearing on September 14, 2018, during which Plaintiff appeared and testified.  (*Id.* at 69.)  In an opinion dated November 5, 2018, ALJ Friedman determined that Plaintiff was not disabled. (*Id.* at 66-75.)  Plaintiff appealed the ALJ's decision to the Appeals Council.  (*Id.* at 164-65.)  On March 25, 2020, the Appeals Council granted Plaintiff's request for review of ALJ Freidman's decision and remanded the case to a different ALJ because of ALJ Friedman's failure to sufficiently explain how Plaintiff's functional limitations, as detailed by Dr. Bhargava's report, factored into the assessment of Plaintiff's residual functional

2

capacity ("RFC").  (*Id.* at 81.)  On July 7, 2020, Administrative Law Judge Ifeoma N. Iwuamadi ("ALJ Iwuamadi" or the "ALJ") held a hearing by phone of which Plaintiff appeared with an attorney representative and testified.  (*Id.* at 13.)  In a decision dated January 29, 2021, ALJ Iwuamadi determined that Plaintiff was not disabled.  (*Id.* at 20.)  Plaintiff appealed ALJ Iwuamadi's decision to the Appeals Council.  (*Id.* at 213-14.)  On July 3, 2021, the Appeals Council denied Plaintiff's request for review, making the decision by ALJ Iwuamadi the final determination of the Commissioner.  (*Id.* at 1.)

Plaintiff timely initiated the instant action on August 18, 2021.  (ECF No. 1, Complaint.)  On July 5, 2022, Defendant filed the Administrative Transcript.  (Tr.)  On December 9, 2021, Plaintiff served her notice of motion and memorandum of law in support of her motion for judgment on the pleadings.  (ECF No. 9, Memorandum of Law in Support of Plaintiff's Motion for Judgement on the Pleadings, ("Pl. Mem.").)  On June 15, 2022, Defendant served its notice of cross-motion and memorandum of law in support of its cross-motion for judgment on the pleadings and in opposition to Plaintiff's motion.  (ECF No. 10, Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, ("Def. Mem.").)  The entire set of motion papers was filed on July 5, 2022.

## **LEGAL STANDARD**

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or

4

within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971) (internal quotation marks omitted)).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the Court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

5

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether the combined effect of all of the claimant's impairments, including those that are not severe (as defined by the regulations), would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F3.d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant

is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, upon reviewing decisions of the Commissioner, to remand for further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. If the record before the Court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the Court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

<u>**DISCUSSION**</u>

**I.   ALJ Iwuamadi's Disability Determination**

7

Using the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 11, 2015. (Tr. at 16.) At step two, the ALJ determined Plaintiff suffered from the severe impairments of left lumbar radiculopathy, post-traumatic concussion, cervicalgia and headaches which significantly limit Plaintiff's ability to perform basic work activities. (*Id.*)

At step three however, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.*) Specifically, the ALJ found that Plaintiff's impairments did not meet the criteria of spine related disorders under listing 1.04A. (*Id.*)

Additionally, the ALJ considered whether Plaintiff's headaches rose to the level of classification as a neurological disorder. (*Id.*) Evaluated under SSR 19-4p, the provision to evaluate headaches and recurring pain in the head, scalp, or neck as a neurological disorder, the ALJ determined that there was insufficient evidence to demonstrate that Plaintiff's headaches were severe enough to rise to the level of a listed neurological disorder. (*Id.*) The ALJ did not specify the reason for finding

that the Plaintiff did not provide sufficient evidence that her headaches met the listings for a neurological order.

At step four of the five-step sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform light work, with the following limitations: (1) only occasionally performing bilateral overhead reaching; (2) only occasionally climbing ramps and stairs; (3) never climbing ladders, ropes, or scaffolds; (4) never working at unprotected heights; (5) never working with moving mechanical parts; and finally, (6) never operating a motor vehicle. (*Id.*)

In determining that Plaintiff had the RFC to perform light work with special conditions, the ALJ considered Plaintiff's hearing testimony and medical records. (*Id.* at 17.) The medical records included a report from Plaintiff's treating physician Dr. Uday Bhargava M.D., as well as two reports authored by Plaintiff's treating neurologist Dr. Bhim Nangla, and his team physicians, Drs. R.C. Krishan (neurologist), Anmika Jain (rehabilitation specialist), with a separate opinion submitted by Dr. Jeff Mollins (chiropractor). (*Id.* at 17.) The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 19.)

Finally, at step five of the sequential evaluation process, the ALJ found, based on Plaintiff's RFC, that she was capable of performing her past relevant work as a ward clerk or an admission clerk.  (*Id.* at 19.)  In arriving at this conclusion, the ALJ relied on the vocational expert's testimony that Plaintiff retains the RFC to perform the functional demands and job duties of a ward clerk or an admission clerk.  (*Id.*)  Accordingly, the ALJ found that Plaintiff was not "disabled" and thus not entitled to DIB under the Act.  (*Id.* at 20.)

## II.  ALJ Iwuamadi's Assessment of Opinion Evidence

Under the treating physician rule, the opinion of a claimant's treating physician as to "the nature and severity of the [claimant's] impairment is given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(c)(2)).[1]

---

[1] In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  In this action, because Plaintiff's application for disability and disability insurance benefits was filed on July 26, 2016, before regulatory amendments were enacted on March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is generally assigned added or controlling weight, absent substantial contrary evidence.

An ALJ who does not accord controlling weight to a treating physician's medical opinion must consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2); *but see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). "The ALJ must then 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Furthermore, "a treating physician's conclusion that a claimant is disabled is not entitled to controlling weight, as this determination is reserved to the Commissioner." *Quiles v. Saul*, No. 19-cv-11181(KNF), 2021 WL 848197, at 9 (S.D.N.Y. Mar. 5, 2021); see 20 C.F.R. § 404.1527(d)(1). "[W]hen an ALJ discounts

11

a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so." (*Id.*)

Additionally, though "[t]he standards for disability under worker's compensation programs are entirely distinguishable from those for Social Security disability insurance benefits," *Naumov v. Comm'r of Soc. Sec.*, 539 F. Supp. 3d 273, 275 (E.D.N.Y. 2021), an ALJ can consider and afford some weight to the determination of another governmental agency, *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975).

Plaintiff contends that the ALJ did not properly apply the treating physician rule in assessing the opinions of Plaintiff's treating physician, Dr. Bhargava, and treating neurologist, Dr. Nangla. (Pl. Mem. at 9-10.)  The Court discusses each of their opinions in turn.

### a. ALJ Iwuamadi's Assessment of Dr. Bhargava's Opinion

The Court finds that ALJ Iwuamadi lacked sufficient reasons in assigning "little weight" to Dr. Bhargava's August 2016 medical report of Plaintiff's treating physician, Dr. Bhargava. (Tr. at 17.)  According to the Dr. Bhargava's report, Plaintiff was diagnosed with chronic "back pain without radiation" which prevented her from lifting any weight at all, standing or walking for more than two hours in a workday, as well as providing limitations with regards to bending, lifting, stooping, pushing, pulling, climbing, and sitting. (Tr. at 17, 698-703.)  The report

12

also stated that "[p]ain was at a level of 10, and not relived by over the counter medications." (*Id.*) ALJ Iwuamadi afforded this report little weight finding it was "inconsistent, not supported by any objective evidence or physical examination results, and not supported by the medical record." (*Id.* at 17.) Specifically, the ALJ took note of the lack of MRI's or X-Rays in the record which could confirm or rule out a severe impairment of the spine. (*Id.*) The presence of positive EMG testing in the medical record was discounted by the ALJ in light of Plaintiff "treat[ing] her pain conservatively by taking Motrin daily," her inability to recall the last time she attended physical therapy, and the fact that "she last opted for injections in response to pain in 2017." (*Id.* 18.) Additionally, the ALJ noted that "the amount of sitting that the claimant could perform was not defined" in the report "and other limitations were not specified." (*Id.*)

ALJ Iwuamadi failed to provide sufficiently "good" reasons for not affording Dr. Bhargava's opinion controlling weight. *Burgess,* 537 F.3d at 129-130 ("Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."). The ALJ appears to cite Plaintiff's conservative pain treatment regimen, namely daily Motrin and no injections in response to pain since 2017, as examples of how Dr. Bhargava's findings are inconsistent with the medical record. (Tr. at 17.) The ALJ should not afford less

13

weight to the opinion of a treating physician solely because of a conservative treatment regimen. *Burgess,* 537 F.3d at 129, ("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.") Accordingly, Plaintiff's use of Motrin to treat her pain alone is not sufficient evidence in support of rejecting a disability determination. (*Id.* ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled *if* that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI.")(citation omitted)(emphasis added)).

The ALJ notes that "there is positive EMG testing in the record" but that "[t]here are no x-rays or MRIs in the record to confirm a severe impairment in [Plaintiff's] spine." (Tr. at 17.) The EMG testing the ALJ refers to, which occurred on April 27, 2016, showed evidence of left L5 radiculopathy[2]. (Tr. at 18, 815.) The ALJ also notes that a head scan CT taken on December 11, 2015 showed "calcification of bilateral basal ganglia," and "white matter" in the left side of the Plaintiff's brain, but does not

---

[2] The Court takes judicial notice that, "L5 radiculopathy is usually associated with numbness down the side of the leg and into the top of the foot." Mayo Clinic Health System, *Sciatica and radiculopathy: Peculiar names for shooting back, leg pain*, July 9, 2021, https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/sciatica-and-radiculopathy-peculiar-names.

provide more significance of these findings. (*Id.*) Before rendering her decision, the ALJ noted that she rejected Plaintiff's request for a physical consultative examination and instead found "that the medical record is complete." (*Id.* at 14.) Thus, the ALJ referred to no other evidence, much less substantial evidence, in the record to support the ALJ's finding that Dr. Bhargava's opinion was entitled to lesser weight.

Here, because the ALJ did not apply the treating physician rule properly, remand is appropriate. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand.") (citation omitted)). On remand, the ALJ is directed to either re-weigh Dr. Bhargava's opinion or further develop the record and articulate reasons for affording his opinion "little weight."

**b. ALJ Iwuamadi's Assessment of Dr. Nangla's Opinion**

The ALJ also unreasonably afforded no weight to both of Dr. Nangla's reports in the ALJ's determination of Plaintiff's RFC. (Tr. at 17–18.) The Court will address each report independently. The first report, dated June 17, 2016, by Dr. Nangla, which he drafted along with Drs. Krishan and Jain, diagnosed Plaintiff with "posttraumatic concussion, cervical

15

sprain/strain, lumbar posttraumatic strain/sprain, and bilateral shoulder derangement." (*Id.* at 17, 681.) These conditions cause symptoms of numbness and tingling in the right arm and leg, and bilateral shoulder pain, which was aggravated by prolonged sitting, pushing, bending, and pulling. (*Id.* at 17, 680-681.) Additionally, Plaintiff suffered from "cervical and lumbar range of motion restrictions." (*Id.* at 17, 680.) According to Dr. Nangla and his team, Plaintiff's pain was relieved by rest and medication. (*Id.*) Dr. Nangla's opinion at this time was that Plaintiff was "one hundred percent tempora[rily] disab[led]." (*Id.*) The ALJ afforded this opinion no weight because it was offered for Workers' Compensation purposes and thus "does not correspond to an evaluation of 'disability' under Social Security Law and Regulations." (*Id.* at 17.)

The ALJ erred in affording the medical report no weight solely because it was created for workers compensation purposes. She correctly recognized that workers compensation programs and the Social Security Disability Insurance Benefits program use distinct standards and thus a finding of disability made for workers compensation purposes is not binding on her. *Naumov*, 539 F. Supp. 3d at 275 ("The standards for disability under workers' compensation programs are entirely distinguishable from those for Social Security disability insurance benefits.") The ultimate determination of disability is one reserved for the Commissioner.

16

20 C.F.R. § 404.1527(d).  The ALJ, however, erred by dismissing the entirety of the report on the basis of a workers' compensation report, because, while not binding, the decisions of other governmental agencies with respect to disabilities can be considered by an ALJ.  *Cutler*, 516 F.2d at 1286 ("While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered.")  Additionally, the ALJ erred by ignoring the opinion of a treating physician without explicitly considering *any* of the *Burgess* factors, (Tr. at 17-18), including: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella*, 925 F.3d at 95–96 ((citation omitted); *see* 20 C.F.R. § 404.1527(c)(2).  Although it is not necessary for an ALJ to articulate each *Burgess* factor explicitly, it must be clear that the ALJ did consider them. *Atwater*, 512 F. App'x at 70 ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.")

In the second report authored by Dr. Nangla and his team in June of 2016, Plaintiff's diagnosis remained the same, however her pain was described as "intermittent" in the neck and back and

17

was "aggravated only by prolonged sitting, pushing, bending and pulling." (Tr at 18.)  Dr. Nangla further clarified the range of motion restrictions from his previous report, be specifying that Plaintiff's "[c]ervical flexion was limited to 50 degrees, [and] lumbar flexion was [limited] to 75 degrees . . . ." (*Id.*)  The report reaffirmed that pain and limited range of motion were only alleviated by rest and medication.  (*Id.*)  Again, ALJ Iwuamadi afforded this opinion because it was made for workers' compensation purposes.  (*Id.*)  The ALJ also cited inconsistencies with the rest of the record, a lack of MRI's or X-rays to confirm an impairment of the spine, and Plaintiff's own testimony that she conservatively treated pain with Motrin daily as additional reasons for discarding the opinion.  (*Id.*)

The ALJ's reasoning for dismissing this second report from Plaintiff's treating physician suffers from the same infirmities because she fails to provide sufficiently "good" reasons for not affording Dr. Nangla's opinion controlling weight. *Burgess* 537 F.3d at 129-130.  The ALJ's initial determination that the report should be disregarded entirely because it was made for the purposes of workers compensation does not stand because the decisions of other governmental organizations should be given some weight despite using entirely different standards.  See *Cutler*, 516 F.2d at 1286.  The ALJ's additional reasons do little to offset this error; the ALJ again attempts to cite Plaintiff's conservative

18

pain treatment as evidence of inconsistency with the report. (Tr. at 18). As this Court previously determined in regard to Dr. Bhargava's report, a conservative treatment regimen alone is not a sufficiently "good" reason for dismissing the opinion of a treating physician without other substantial evidence from the record. *Burgess,* 537 F.3d at 129. Just as the ALJ did with respect to Dr. Bhargava's report, the ALJ noted the presence of "positive EMG testing in the record" and a lack of "x-rays or MRI's in the record to confirm a severe impairment in [Plaintiff's] spine." (Tr. at 17.) Thus, the ALJ cites to nothing *within* the record which demonstrates inconsistency between Dr. Nangla's opinion and the conservative pain treatment regimen that the Plaintiff was on.

Remand is appropriate on these grounds because the ALJ again did not properly apply the treating physician rule nor provide sufficiently "good" reasons for dismissing both of Dr. Nangla's reports. *See Kennedy*, 343 F. App'x at 721. (summary order). On remand, the ALJ is directed to re-weigh the reports of Plaintiff's treating physicians and to comprehensively address the *Burgess* factors if the ALJ concludes the treating physician's opinions deserves less than controlling weight.

**III. ALJ Iwuamadi Failed to Support RFC With Substantial Evidence**

The Court finds that the ALJ erred in determining Plaintiff's RFC without further developing the record to include

19

medical opinions from Plaintiff's treating physicians and obtaining other medical consultations. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (finding that an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.")  In addition to following the treating physician rule, the ALJ's RFC determination must be supported by substantial evidence.  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).

Furthermore, medical records, Plaintiff's own testimony as to her RFC, or the testimony of a vocational expert alone cannot provide substantial evidence for an RFC determination; rather, an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.,* No. 20-cv-3030(AMD), 2021 WL 3373132, at 4 (E.D.N.Y. Aug. 3, 2021).  A treating physician's statement that a claimant is disabled is not determinative because it is the ALJ who is tasked with reaching an RFC assessment based on the record as a whole.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  But "because an RFC

determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Jackson v. Berryhill*, No. 18-CV-04569, 2019 WL 4593648, at 8 (S.D.N.Y. Sept. 23, 2019).

Additionally, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ can be required to go so far as to "pay for a consultative examination where necessary to ensure a developed record." *Burger v. Astrue*, 282 F. App'x 883, 885 (2d Cir. 2008). *See* 20 C.F.R. § 404.1512(d)-(f)

Plaintiff asserts and Defendant disputes that the ALJ, after failing to afford controlling weight to either of the reports and opinions of treating physicians, failed in her obligation to develop the record by seeking clarification and additional evidence from the treating physician or ordering a consultative medical examination. (Pl. Mem. at 11). Instead, Plaintiff argues that the ALJ's determination was "grounded solely in [her] lay assessment of Plaintiff's RFC. (*Id.*) The Court agrees that the ALJ failed to develop the record.

   a. **ALJ Iwuamadi's RFC Determination Was Not Supported by a Medical Opinion**

The ALJ's RFC determination was not supported by a medical opinion. The ALJ found the opinions of Dr. Bhargava, Dr. Nangla, and Dr. Mollins unpersuasive, (Tr. at 17-18), and afforded "little weight" to Dr. Bhargava's medical report. (*Id.* at 17). She opined that Dr. Bhargava's findings that Plaintiff could not lift any weight, could not stand or walk for more than two hours in a workday, had limitations sitting, pushing and pulling, as well as other "unspecified postural limitations," were "inconsistent, not supported by any objective evidence or physical examination results, and not supported by the medical record. (*Id.*) The ALJ particularly noted the lack of x-rays or MRI's in the record to support a severe impairment of the spine, the ill-defined nature of the limitations Dr. Bhargava identified, and Plaintiff's conservative treatment regimen. (*Id.* at 17-18.)

For the reasons detailed above, the ALJ afforded no weight to the two reports provided by Dr. Nangla and his team Drs. Krishan and Jain regarding Plaintiff's RFC, because the reports were offered for Workers' Compensation purposes. (*Id.*) The ALJ also gave limited weight to the treating chiropractor, Dr. Mollins' opinion. (*Id.*) Dr. Mollins claimed that Plaintiff was "unable to work based on her injuries." (*Id.*) Here, the ALJ again noted the lack of MRI's or x-rays in the record and Plaintiff's conservative treatment regimen.

After dismissing or otherwise affording "little weight" to all of the medical opinions in the record, the ALJ acknowledged that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 19.) Specifically, the ALJ stated that Plaintiff "is receiving very little in the way of ongoing medical treatment," "had not had MRI scans or X-rays that would confirm more severe medical problems," and ultimately decided that "[t]he diagnosed conditions established for [Plaintiff] would cause certain physical restrictions, but would not prevent her from performing a wide range of light exertional work." (*Id.*)

Though the ALJ cites several different portions of the medical record to support her RFC determination, she errs in failing to affirmatively consider and cite to any of the medical opinions entered into the record. *Pearson,* No. 20-cv-3030(AMD), 2021 WL 3373132, at 4. In citing to various portions of the medical record to disprove several properly submitted medical opinions stating that Plaintiff is disabled, the ALJ has instead substituted her own opinion on the medical evidence for that of the physicians. *Jackson*, No. 18-CV-04569, 2019 WL 4593648, at 8; *Dennis v. Colvin*, 195 F. Supp. 3d 469 (W.D.N.Y. 2016) (internal

citation omitted) (remanding because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."); *see also Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) ("Neither the trial judge nor the ALJ is permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion.")  The ALJ committed legal error because an RFC, though ultimately determined by the Commissioner, is a medical determination and as such must be supported by at least some part of a properly submitted medical opinion.  (*Id.*)

### b. ALJ Iwuamadi Failed to Sufficiently Develop the Record When Confronted with Deficiencies in the Medical Opinions

The ALJ, when confronted with several allegedly deficient medical opinions which she found were entitled to "little weight," failed to sufficiently develop the record to make a determination of Plaintiff's RFC that was supported by substantial evidence.  It is well-established that even if a Plaintiff is represented, an ALJ "has an affirmative obligation to develop the administrative record."  *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Calero v. Colvin*, No. 16-cv-6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) (holding that an ALJ has an independent duty to develop the record).

In remanding the earlier decision rendered by ALJ Friedman, the Appeals Council listed issues that ALJ Iwuamadi was to consider. (Tr. at 81.) Specifically, the Appeals Council directed ALJ Iwuamadi to "[o]btain additional evidence concerning the claimant's cervical derangement and lumbar derangement" and specified that such additional evidence may include "a consultative internal medicine examination and medical source opinions." (*Id.*) The Appeals Council also specified that the ALJ "may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements . . . ." (*Id.*) Before rendering her decision, the ALJ conducted a telephone hearing where she heard from Plaintiff and a vocational expert, attempted to subpoena evidence from Dr. Deitrich Holtkamp to no avail, and entered unsuccessful requests for additional medical records into evidence. (*Id.* at 13-14.) Plaintiff's representative requested a physical consultative examination, however the ALJ found that the examination was unnecessary and rendered her decision. (*Id.* at 14, 861.) After failing to develop the record, the ALJ's decision identified several deficiencies in the record, such as a lack of MRI imaging or X-rays, and ill-defined limitations specified by Dr. Bhargava as reasons for her RFC determination. (*Id.* at 17-19.)

This was an error on the part of the ALJ because "where there are deficiencies in the record, an ALJ is under an

25

affirmative obligation to develop a claimant's medical history." *Rosa*, 168 F.3d at 79; *see also, e.g., Nusraty v. Colvin*, 15-cv-2018 (MKB), 2016 WL 5477588, at *13 (E.D.N.Y. Sept. 29, 2016) (finding that the ALJ had an "affirmative duty" to develop the record and "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings"). The ALJ recognized a lack of MRI or X-ray imaging to confirm a severe impairment of the spine as deficiencies in the record which she used to justify affording less weight to the medical opinions of two separate physicians. (Tr. at 18-19.) She could have remedied this deficiency by ordering Plaintiff to receive a consultative examination, as was suggested by Plaintiff's representative. (*Id*. at 14, 861.) The ALJ was "required to exercise [her] independent duty to develop the record and, at a minimum, secure a consulting physician to examine Plaintiff and render an opinion as to her functional limitations". *Williams v. Comm'r of Soc. Sec*. 366 F. Supp. 3d 411, 415-18 (W.D.N.Y. 2019); *see also Burger*, 282 F. App'x at 885; 20 C.F.R. § 404.1512(d)-(f).

On remand, the ALJ should seek clarification from Plaintiff's treating physicians so that their opinions may be afforded proper weight and the ALJ should attempt to secure a consultative examination of Plaintiff for the purposes of

determining whether or not Plaintiff's disabled due to a severe impairment of her spine.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED,** Defendant's cross-motion for judgment on the pleadings is **DENIED,** and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment remanding this case, and to close the case.


**SO ORDERED.**

DATED:     April 9, 2022
           Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge